## STATE OF MISSOURI, Respondent, v. DEES, Appellant.

### St. Louis Court of Appeals, March 3, 1908.

CRIMES: Carrying Concealed Weapons: Defense of Person. In a prosecution for carrying a concealed weapon, where the defendant claimed the right to carry a weapon on the ground that he "had been threatened with great bodily harm" and had reason to carry the same "in the necessary defense of his person," the evidence is examined and held sufficient to justify an instruction directing the jury to find the defendant not guilty.

Appeal from Wayne Circuit Court.—*Hon. Joseph J. Williams*, Judge.

REVERSED.

*Orrin L. Munger* for appellant.

*Almon Ing* for respondent.

. BLAND, P. J.—Defendant was tried and convicted, on an indictment preferred against him by the grand jury of Wayne county, of the offense of unlawfully carrying a deadly weapon concealed on or about his person. Defendant admitted he carried a weapon concealed upon his person, and as a defense introduced evidence tending to show that he had been threatened with great bodily harm by the prosecuting witnesses, and carried the weapon in the necessary defense of his person. His contention for a reversal of the judgment is that the evidence was so clear and convincing that he had been threatened with great bodily harm by the prosecuting witnesses, that the trial court erred in refusing to direct a verdict of acquittal as it was moved to do at the close of all the evidence.

The indictment charges that the offense was committed on November 8, 1904. Defendant admitted that he carried a pistol concealed on his person on that date. The evidence shows that in the month of March, 1904, Hill and Coffer, the prosecuting witnesses, were engaged in moving a lane fence and putting it over on defendant's land, near his house. Defendant objected to the moving of the fence and ordered Hill and Coffer off his land. Hill became angry and threw rocks at defendant, hitting him several times, and ran him to his house. Defendant testified that on a subsequent occasion he led his horses to a creek for water. Hill was there filling a barrel with water and, without the exchange of a word, threw rocks and clubs at defendant and ran him from the creek. Hill did not contradict

this evidence. On another occasion, Coffer was repairing a line fence between his employer's land and the land of defendant. Defendant went to where Coffer was at work and an altercation ensued, during which Coffer drew a knife on defendant. Coffer testified that on this occasion defendant first drew a weapon on him. Defendant testified he did not draw a weapon but when Coffer drew his knife, he (defendant) put his hand to his pocket and warned Coffer to stand back. Coffer then went to the house and returned with a gun. Defendant, however, had gone on his way before Coffer returned. Defendant, Hill and Coffer were all at Williamsville on November 8, 1904, attending the election and saw each other there. They traveled the same road in returning to their homes. Hill and Coffer left Williamsville before defendant, and stopped where the roads forked. They were standing in the road when defendant and his cousin rode up, and Hill applied an opprobrious epithet to defendant. Defendant replied "That is all right, Mr. Hill, there are two of you," and kept on his way. Hill then threw rocks at defendant, and Coffer fired his pistol in his direction. Defendant fired back. This incident is not denied by Coffer or Hill, only Coffer testified he fired his pistol in the air; and Hill testified that defendant raised the trouble by putting his hand to his pocket where he was carrying his pistol. In the summer of 1904, Hill's cattle got into the wheat field of Tobe Dees, a second or third cousin of defendant; while Tobe was driving the cattle out of the field, Hill came up and afterwards said to Tobe, "Young man, I will put a bullet through you like I am going to do Dan Dees, if you don't quit bothering me." This threat was communicated to defendant. Other threats made by Hill were given in evidence. Defendant consulted the prosecuting attorney of the county, in respect to his right to carry a revolver, and related the trouble he had had with Hill and Coffer. The prosecuting attor-

ney read the statute, granting the right to carry a gun, to defendant and explained it to him. Both Hill and Coffer testified they had not threatened defendant with great bodily harm, and Hill said if he had made a threat he would "have carried it out." Both Hill and Coffer testified that defendant raised all the difficulties that had occurred between them. Their idea of bringing on a difficulty seems to be that defendant brought one on if he protested against Hill and Coffer trespassing on his land, or if he dared to water his horses at a running stream where Hill happened to be, or to pass Hill and Coffer on the public road. The evidence is uncontradicted, that Hill, without provocation, assaulted and beat defendant with rocks; and that Coffer shot at him, or had given him good reason to believe he shot at him, without any excuse or provocation whatever. That Hill and Coffer stopped in the road on November 8, 1904, for the express purpose of assaulting defendant and did assault him with rocks, and shot at him, hardly admits of doubt. A threat, within the meaning of the statute (sec. 1863) is a menace or declaration of one's purpose or intention to do great bodily harm to the person of another, or to injure or destroy his property, or to unlawfully invade his home. The undisputed evidence is that Hill, on more occasions than one, endangered the life of defendant by throwing rocks and clubs at him, and that Coffer, on one occasion, shot at him, or at least caused defendant to believe he shot at him. On this evidence, to deny defendant the right to carry a weapon, would be to deny him the right of self-defense and the right expressly given by the statute (sec. 1863, supra). We think the defendant's instruction directing the jury to find him not guilty should have been given. We therefore reverse the judgment and discharge the defendant. All concur.