**STATE of Missouri, Respondent,**

v.

**Frederick Alexander ROBINSON, Appellant.**

**No. 43803.**

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 6, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 20, 1981.

Application to Transfer Denied Jan. 18, 1982.

---

William Shaw, Joseph W. Downey, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Clayton, for respondent.

CRIST, Presiding Judge.

Defendant shot and killed Mosley Cannon. The ensuing jury trial on the charge of murder in the second degree resulted in defendant's conviction of manslaughter, § 565.005, RSMo. 1978, and his sentence of ten years' imprisonment. His sole assignment of error on appeal is the trial court's refusal of his self-defense instruction, which contained instructions on threats and the use of physical force patterned on those in MAI–CR No. 2.41.1 paras. 4 and 5, respectively. The trial court did instruct on self-defense, but used only the pertinent parts in each of the first three paragraphs of the pattern instruction and the mandatory first part of paragraph 4. While Notes on Use 3 under MAI–CR No. 2.41.1 ("Justifiable Use of Force in Self-defense") states "... the instruction must be given whenever there is evidence to support it ....", the additional instructions tendered by defendant lack an evidentiary base in the record. The judgment is affirmed.

The refused instruction on threats is patterned on one in MAI–CR No. 2.41.1 para. 4:

If Mosley Cannon prior to the encounter made threats which were known by or communicated to the defendant, you may consider such threats as explaining the conduct or apprehensions of the defendant at the time of the encounter and for the further purpose of determining who was the aggressor.

Defendant was seventeen years old and living at home with his mother, younger sister, three brothers, and a boarder named Solomon Dukes. Seven months earlier, Cannon was also living at the Robinson home, but was forced to move out when defendant's mother learned that Cannon had been sleeping with defendant's sister. Cannon continued to visit, however, sometimes staying overnight, until he was confronted again by defendant's mother upon her learning through defendant that Cannon again had slept with the younger sister. The incident resulted in Cannon dubbing defendant "Freddie fish the snitch," and in Cannon telling defendant on one occasion: "If you were my age, I'd bust you in your face." The sobriquet "Freddie fish the snitch" and the remark just quoted constituted the alleged threats.

The victim's statements were not threats. They show no purpose or intention to harm the defendant, see: *State v. Dees*, 129 Mo. App. 293, 109 S.W. 800, 801 (1908), nor is there evidence supporting even an inference that defendant felt threatened by the statements. The trial court's refusal to give the instruction on threats was not error.

The other refused instruction comes from MAI–CR No. 2.41.1 para. 5:

If the defendant reasonably believed it was necessary to use the amount of physical force he used in order to protect himself from Mosley Cannon, it is of no consequence that the appearance turned out to be false. If the defendant acted in lawful self-defense, as submitted in this instruction, he must be acquitted even though there was no purpose on the part of Mosley Cannon to harm him and no purpose on the part of Mosely Cannon to seriously injure him and no immediate danger to him and no actual necessity to use such physical force as he used.

The circumstances surrounding the shooting show the instruction was properly refused.

During the evening of the day before the homicide, the victim had been drinking with Dukes and the defendant's older brother. All three returned to the Robinson house around midnight for some sandwiches and beer. Defendant testified that he awoke about 5:00 a. m. the following morning to go to work, and remembered that he had forgotten to remove from the car he was driving a handgun acquired the day before from a friend. On his way to the car, defendant's investigation of some sounds coming from his sister's bedroom revealed that she and the victim were in bed together. Defendant testified that he merely continued on his way outside to bring in the gun, and that upon removing the gun from under the front seat of the car and turning around to re-enter the house, he was confronted by the victim. Defendant further testified:

> ... he [i.e., the victim] was saying something to me which I still can't remember; and it was pertaining to my sister; and all I told him was: I'm not even worried about that. I'm not going to say nothing to you again about bothering her.
>
> So, upon saying that he started coming toward me with his hands out like that, and that's all I can remember to that point.

        *    *    *    *    *    *

The defendant shot the victim twice and he died from the wounds a short time later. No one else witnessed the shooting, and defendant repeatedly denied any recollection of it.

As defendant's testimony indicates, there was no evidence that the victim's aggressive act asserted by defendant was other than what it appeared to be. There was therefore no evidence that defendant misapprehended the act and thereby mistook the force required to repel it. The jury received an instruction under MAI–CR No. 2.41.1 para. 2 on the lawful use of deadly force, and the trial court did not err by refusing the instruction patterned on paragraph 5.

The judgment is affirmed.

REINHARD and SNYDER, JJ., concur.